SYLLABUS

(This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.)

## New Jersey Transit Corporation v. Certain Underwriters at Lloyd's London
### (A-72/73-19) (083801)

**(NOTE: The Court did not write a plenary opinion in this case. The Court affirms the judgment of the Appellate Division substantially for the reasons expressed in Judge Yannotti's opinion, published at 461 N.J. Super. 440 (App. Div. 2019).)**

**Argued January 4, 2021 -- Decided January 27, 2021**

**PER CURIAM**

This appeal involves an insurance coverage dispute arising out of water damage caused by Superstorm Sandy to properties owned by plaintiff New Jersey Transit Corporation (NJ Transit).

At the time Superstorm Sandy struck New Jersey in October 2012, NJ Transit carried a $400 million multi-layered property insurance policy program through eleven insurers. When NJ Transit sought coverage for the water damage to its properties brought about by the storm, certain of its insurers invoked the $100 million flood sublimit in NJ Transit's policies and declined to provide coverage up to the policy limit.

NJ Transit filed an action seeking a declaratory judgment against those insurers. The trial court found that the $100 million flood sublimit did not apply to NJ Transit's claims; it also found that the insurers had not submitted sufficient evidence to support their claims for reformation of the policies. The court accordingly entered summary judgment in favor of NJ Transit and denied the insurers' motions for summary judgment.

The Appellate Division affirmed, 461 N.J. Super. 440, 448 (App. Div. 2019), finding that "the water damage to [NJ Transit's] properties that occurred during Superstorm Sandy is not subject to the $100 million flood sublimit," id. at 457.

The appellate court first considered the insurers' argument that the Sandy-related damage to NJ Transit's properties was subject to the flood sublimit because that damage met either of two separate definitions of "flood" in the policies: either "[t]he overflow, release, rising, back-up, runoff or surge of surface water;" or "[t]he unusual or rapid accumulation or runoff of surface water from any source." Id. at 454-55.

1

The court noted that the policies at issue also contain separate definitions for a "named windstorm." Id. at 455. Specifically, the policies of most of the defendant insurers separately define "named windstorm" to include "wind driven water, storm surge and flood associated with, or which occurs in conjunction" with a "named windstorm." Ibid. And the policy of defendant Torus Specialty Insurance (Torus) defines "named windstorm" as the "direct action of wind including storm surge when such wind/storm surge is associated with or occurs in conjunction with" a named windstorm. Ibid.

The Appellate Division reasoned as follows:

> The policies do not define "flood" to include "storm surge" and "wind driven water" associated with such a "named windstorm." Although the definition of "flood" includes "surge," the definition of "named windstorm" more specifically encompasses the wind driven water or storm surge associated with a "named windstorm." Where, as here, two provisions of an insurance policy address the same subject, the more specific provision controls over the more general.
>
> Furthermore, if the parties had intended that damage from a "storm surge" would be subject to the flood sublimit, the policies would have stated so in plain language. Moreover, if the term "flood" already included damage from a "storm surge" associated with a "named windstorm," as defendants claim, there would have been no need for the parties to include the "named windstorm" provision in the policies.
>
> [Ibid. (citation omitted).]

The appellate court also rejected a number of the defendant insurers' arguments based on the language of the policies. Id. at 455-57.

First, the court disagreed that the Occurrence Limit of Liability Endorsement (OLLE) in the policies combines all windstorm, flood, and other perils in a single event or "occurrence" for purposes of applying the flood sublimit. Id. at 449-50, 455. The court noted that the OLLE "does not address whether the Sandy-related damage to [NJ Transit's] properties was damage 'caused by flood' or damage resulting from a 'named windstorm,'" nor does it "expressly provide that damage caused by a 'flood' and damage from a 'named windstorm' are to be treated as a single event or 'occurrence' for purposes of applying the flood sublimit." Id. at 455-56.

The court also rejected the insurers' argument that, for the flood sublimit not to apply here, the policies would have needed to contain a specific provision removing

"storm surge" from the definition of "flood" or stating that the flood sublimit does not apply to the inundation of property associated with a "named windstorm." Id. at 456. The court determined "that the relevant provisions of the policies are sufficiently clear and establish that water damage associated with a 'named windstorm' does not come within the definition of 'flood' and is not subject to the flood sublimit." Ibid.

Finally, the court rejected the argument that the parties never intended that the "named windstorm" provision would remove water damage associated with a "named windstorm" from the flood sublimit. Ibid. The court found instead that "[t]he plain language of the policies indicates that the purpose of the 'named windstorm' definition was to differentiate between the inundation caused by a 'surge' of water, which may have no relationship to a storm, and the inundation resulting from a 'storm surge,' which the policies define as wind driven water associated with a 'named windstorm.'" Id. at 457.

After reaching its decision based on the plain language of the insurance policies, the Appellate Division explained that a decision by the United States Court of Appeals for the Fifth Circuit supports its interpretation of the policies and that the defendant insurers' reliance on two other cases was misplaced. Id. at 457-60.

The court then expressed agreement with NJ Transit's argument that it was entitled to coverage under New Jersey's efficient proximate cause test, which is sometimes referred to as Appleman's Rule. Id. at 460-63. In reaching that determination, the court rejected, among other arguments, certain defendant insurers' reliance on a case that "dealt with the application of contra proferentem" and did "not address the efficient proximate cause doctrine." Id. at 462.

After next rejecting the defendant insurers' arguments that the trial court should have considered extrinsic evidence, id. at 463-64, the Appellate Division explained why it was not persuaded by Torus's reformation claim, id. at 464-67.

The Court granted the petitions for certification filed by the defendant insurers. 242 N.J. 497 (2020); 242 N.J. 504 (2020).

**HELD:** The Court affirms the judgment of the Appellate Division substantially for the reasons expressed in Judge Yannotti's thoughtful opinion. The Court relies principally on the Appellate Division's analysis of the plain language of the relevant insurance policies. 461 N.J. Super. at 454-57. The Court does not rely on the discussion of Appleman's Rule or the doctrine of contra proferentem. See id. at 460-63.

**AFFIRMED**.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in this opinion.**

3

New Jersey Transit Corporation,

Plaintiff-Respondent,

v.

Certain Underwriters at Lloyd's London,
Maiden Specialty Insurance Company,
RSUI Indemnity Company, and
Westport Insurance Corporation,

Defendants-Appellants,

and

Torus Specialty Insurance Company,

Defendant-Appellant,

and

Hudson Specialty Insurance Company
and Ironshore Specialty Insurance Company,

Defendants.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
461 N.J. Super. 440 (App. Div. 2019).

Argued                          Decided
January 4, 2021            January 27, 2021

1

Shawn L. Kelly and Michael J. Smith argued the cause for appellant StarStone Specialty Insurance Company, f/k/a Torus Specialty Insurance Company (Dentons US and Stewart Smith, attorneys; Shawn L. Kelly, Jonathan D. Henry, Erika M. Lopes-McLeman, Michael J. Smith, and Bryan W. Petrilla, on the briefs).

Robert W. Fisher, a member of the Georgia bar, admitted pro hac vice, argued the cause for appellants RSUI Indemnity Company and Westport Insurance Corporation (Clyde & Co US, attorneys; Kevin M. Haas, Robert W. Fisher, Taylor L. Davis, a member of the Georgia bar, admitted pro hac vice, and James M. Bauer, a member of the Georgia bar, admitted pro hac vice, on the briefs).

Kenneth H. Frenchman, a member of the New York bar, admitted pro hac vice, argued the cause for respondent (Cohen Ziffer Frenchman & McKenna, attorneys; Robin L. Cohen, Kenneth H. Frenchman, Marc T. Ladd, a member of the New York bar, admitted pro hac vice, and Alexander M. Sugzda, a member of the New York bar, admitted pro hac vice, on the brief).

PER CURIAM

We affirm the judgment of the Appellate Division substantially for the reasons expressed in Judge Yannotti's thoughtful opinion. See N.J. Transit Corp. v. Certain Underwriters at Lloyd's London, 461 N.J. Super. 440 (App. Div. 2019). We rely principally on the court's analysis of the plain language of the relevant insurance policies. See id. at 454-57. We do not rely on the discussion of Appleman's Rule or the doctrine of contra proferentem. See id. at 460-63.

2

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in this opinion.